IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE LAW COMPANY, INC.,

    Plaintiff,

vs.                                       Case No. 10-1241-JTM

THE UNITED DRYWALL GROUP, LLC, and
THE CINCINNATI INSURANCE COMPANY,

    Defendants.

MEMORANDUM AND ORDER

The Law Company, Inc., has commenced the present action against United Drywall, Inc. (UDG), which contracted with Law to provide construction services for a Florida construction project, and Cincinnati Insurance Company (Cincinnati), which issued payment and performance bonds for the project. After Cincinnati Insurance filed its Answer to the Complaint, Law brought the present motion to stay the matter pending arbitration. Law seeks to arbitrate its underlying claims against UDG premised on its arbitration agreement with owner of the project.

Cincinnati opposes the plaintiff's motion. It does not challenge any of the facts set forth in Law's motion (Dkt. 17 at 2-3) indicating that the issues between Law and UDG fall within the scope of the arbitration agreement. Instead, it argues, first, that the Federal Arbitration Act (FAA) invoked by Law does not apply, since the FAA only governs contracts "evidencing a transaction involving commerce," 9 U.S.C. § 2, and the "Law Company does not offer any allegation of facts suggesting

that the Projects at issue involves [sic] the FAA definition of commerce." (Dkt. 24, at 3). Second, it argues that Law waived its right to arbitration under Florida law by the mere act of filing the present action, even in the absence of any showing of prejudice. (Dkt. 46, at 6). Finally, the defendant argues the court should exercise its discretion to deny a stay pending arbitration, since "Law Company would be duplicating much of the activity in this action to date, and Cincinnati's defense efforts and expenses to date could be rendered useless," and because there is no direct arbitration agreement between Law and Cincinnati.

The defendant's first argument is no doubt seriously intended, but its rejection needs no substantial discussion. Other than merely stating the argument, the defendant presents no reason or authority for *why* an agreement for a Kansas company to act as construction manager for a Florida construction project, which later included services provided by a North Carolina subcontractor, could in any way be understood to be anything other than a transaction involving commerce.

The FAA is broadly construed as to the type of agreements included in its reach. As the Supreme Court has stated in *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2003) (per curiam),

> we have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos*., 513 U.S. [265,] 273-274 [(1995)]. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" — that is, "within the flow of interstate commerce," *Allied-Bruce Terminix Cos*., *supra*, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).

Given this broad reach, the court finds that the construction agreement in question falls within the scope of the FAA.

The waiver argument defendant advances is wholly dependent on Florida law. *See* Dkt. 24, 4-6 (citing *Raymond James v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005); *Marine Environment Partners, Inc. v. Johnson*, 863 So.2d 423, 426 (Fla. Dist. Ct. App. 2003); *Frontage Road Partners, LLC v. McMullen*, 934 So.2d 629 (Fla. Dist. Ct. App. 2006); *Beverly Hills Development Corp. v. George Wimpey of Florida, Inc.*, 661 So.2d 969, 971 (Fla. Dist. Ct. App. 1995). But, as the defendant itself acknowledges, state arbitration law is displaced by the FAA to the extent the state law is inconsistent. *Societe Generale de Surveillance v. Raytheon European Mgmt. & Sy.* 643 F.2d 863, 868-69 (1st Cir. 1981). The FAA "preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir.2004).

In seeking to avoid application of the arbitration agreement, the defendant bears the burden of demonstrating that Congress intended to foreclose arbitration of the claims at issue. *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The court is required to resolve any doubt concerning the scope of arbitrable issues in favor of arbitration, "whether the problem at hand is the construction of the contract language itself *or an allegation of waiver*, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 1, 24-25 (1983) (emphasis added).

Accordingly, cases defining the elements of waiver under Florida state law are not controlling where federal cases show the Congress intended the FAA to apply in a broader range of cases. And the case law indicates precisely such an intent. Federal courts have explicitly found that no waiver exists when a plaintiff brings a civil action but thereafter timely seeks a stay pending arbitration. *See Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 569 F.Supp. 1459 (S.D. Tex. 1983).

3

The court rejected the defendant's waiver argument in light of the "strong federal policy favoring arbitration." Id. at 1467. The court finds that federal law would permit plaintiff Law to arbitrate the dispute herein, and that the mere act of bringing the present action does not constitute waiver of that right.

Further, even if the court were to find Florida law governed the enforcement of the arbitration clause in the present case, the court would still find that the agreement has not been waived, as the Florida waiver cases cited by Cincinnati all involve a far greater level of inconsistent action by the party subsequently seeking to enforce arbitration.

In *Breckenridge*, 640 So.2d 208 (Fla. Dist. Ct. App. 1994), upon which the defendant bases much of its argument, the investor plaintiff sued his former broker, after which "[l]itigation between the investor and the broker actively ensued for two and one-half years." The broker filed multiple motions to dismiss which did not mention arbitration, full discovery was conducted, the broker was sanctioned for failing to participate in mediation, and the plaintiff had succeeded in striking all of the broker's expert witnesses. 640 So.2d at 210. The court noted that the broker raised the defense of arbitration on the eve of trial, "having received adverse rulings on all motions which could have disposed of the case and faced with the prospect of proceeding to trial without any expert witnesses." *Id*. The court observed that the way in which the broker conducted the litigation was equivalent to a repudiation of the right to arbitrate:

> Repudiation of an arbitration clause by a defendant, in the form of an answer to the complaint without demand for arbitration constitutes an abandonment of the right to arbitration. Here, the facts are clear that in filing his motions to dismiss, answer and affirmative defenses, the broker did not raise the issue of arbitration. Additionally, the facts indicate the broker participated in protracted litigation by filing pleadings, motions, and eventually a motion for summary judgment.

4

> Arbitration is intended as a cost-effective substitute forum for court, not as an "afterthought" or a "last-ditch" effort. To allow arbitration to proceed after two and one-half years of vigorous litigation and discovery would, in effect, give brokers and brokerage firms a "windfall." Not only would they be given the opportunity to attempt to "wear down" the plaintiff in litigation, but when that failed, they could move for arbitration under the guise of "lack of knowledge."

*Id*. at 212 (citations omitted).

The general observation in *Breckenridge* that participation in litigation may be a basis for waiver under Florida law was in turn based upon *Mike Bradford & Co. v. Gulf States Steel*, 184 So.2d 911 (Fla.App. 1966). In *Mike Bradford*, the court stressed that the participation in litigation was *coupled with a silence as to any arbitration rights*, stating "waiver accrues where, as under the circumstances of this case, a party with full knowledge of its rights answers a complaint without raising the issue of arbitration, counterclaims upon the same contract, allows the cause to proceed for five and one-half months and allows a jury to be impanelled" prior to invoking its right to arbitrate. *See also Finn v. Prudential-Bache Securities*, 523 So.2d 617, 619 (Fla. Dist. Ct. App. 1988), *rev. denied*, 531 So.2d 1354 (Fla.), *cert. denied*, 488 U.S. 917, 109 S.Ct. 274, 102 L.Ed.2d 262 (1988) (holding defendant waived arbitration where it "filed a motion for protective order, a motion for summary judgment, objections to interrogatories, and objections to petitioners' request for admissions and production of documents ... without raising the agreement providing for arbitration").

In short, even if the court applied Florida arbitration law, no authority suggests the existence of waiver under facts similar to the present case. That is, the defendant has cited no case which would require a finding of waiver where the a plaintiff brings a civil action to avoid potential statute of limitations problems, but specifically notes in the Complaint the existence of an arbitration

agreement, and promptly invokes arbitration after the defendant's Answer demonstrates that the dispute does fall within the scope of the arbitration agreement.

Finally, the court rejects Cincinnati's argument that it should deny a stay based on the absence of a direct agreement to arbitrate by the defendant insurer. The federal policy supporting arbitration is sufficiently strong that it may be invoked to stay a proceeding even where not all the parties are subject to the agreement. *See United States ex rel. Humbarger v. The Law Company, Inc.*, No. 01-4156-SAC, 2002 WL 436772 (D. Kan. Feb. 20, 2002) (agreeing that surety was not a party to a construction arbitration agreement, but that a stay pending arbitration would nevertheless advance the interests of justice). In addition, the court finds that, other than Cincinnati's opposition to the Motion to Stay, the parties have not filed any motions or done any discovery. Certainly, Cincinnati may not obtain a stay merely by invoking the expense of its own opposition to that relief.

IT IS ACCORDINGLY ORDERED this 6th day of January, 2011, that the plaintiff's Motion to Stay (Dkt. 16) is hereby granted.

s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE